

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARVIN NORDGAARDEN, | Case No. 3:16-cv-00042-RCJ-WAGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| ISIDRO BACA, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendant's Motion to Dismiss/Motion for Summary Judgment. (ECF Nos. 20, 21.)[1] Plaintiff filed a response (ECF Nos. 24 (response), 25 (affidavit)[2]), Defendant filed a reply brief. (ECF No. 26.)

After a thorough review, the court recommends that Defendant's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendant is David Vest.

On screening, Plaintiff was allowed to proceed with a single retaliation claim against Vest. (ECF No. 8.) This claim is based on allegations that on April 11, 2015, as he left the dining hall

---

[1] These documents are identical.

[2] The affidavit includes an argument concerning Plaintiff's free exercise claim, which District Judge Jones dismissed on screening.

with his Passover meal, Vest and an unknown officer approached Plaintiff and Vest confiscated his meal. (ECF No. 7 at 8.) Plaintiff pointed to a sign that indicated inmates observing Passover were permitted to eat their meals in their cells. (*Id.*) Vest then allegedly shoved Plaintiff against the wall and ripped the sign off of the wall. (*Id.*) Plaintiff was then handcuffed, locked in a holding cell and told, "I hope that your God is happy now!" (*Id.*) Plaintiff asserts he was denied food that day and told he would be locked in the hole if he filed a complaint. (*Id.*)

Defendant Vest moves for summary judgment arguing that Plaintiff failed to properly exhaust his administrative remedies before filing suit, and that Vest did not retaliate against Plaintiff.

## II. LEGAL STANDARD

As Defendant's motion relies on materials outside of the pleadings, the court will treat the motion as one for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the court will "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a

> genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion**

**1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant

must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id.* (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id.* at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id.* at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. *Id.*

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency

holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process. *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain "some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

If the court concludes that administrative remedies have not been properly exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120, *overruled on other grounds by Albino*, 747 F.3d 1162.

"If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at 1171.

**2. NDOC Exhaustion Requirements**

NDOC's Administrative Regulation (AR) 740 governs the grievance process and exhaustion of administrative remedies. (*See* ECF No. 20-4.) Inmates are required to attempt to resolve grievable issues through discussion with their caseworker, and if unsuccessful, must proceed through three levels of grievances to complete the process: the informal, first and second levels. (ECF No. 20-4 at 5- AR 740.04-740.) An inmate dissatisfied with the response to a grievance at any level may appeal to the next level. (ECF No. 20-4 at 4, AR 740.03.6.) If a

response is overdue, the inmate may proceed to the next grievance level. (ECF No. 20-4 at 5, AR 740.03.9.B.)

For civil rights issues, the first level grievance must be initiated within six months. (ECF No. 20-4 at 6, AR 740.05.4.A.) All documentation and factual allegations available to the inmate must be submitted at the informal level. (ECF No. 20-4 at 7, AR 740.05.5.A.) The grievance must also include the remedy sought by the inmate to resolve the claim. (ECF No. 20-4 at 7, AR 740.05.6.) Failure to submit a remedy is considered an improper grievance and the grievance will be returned to the inmate using form DOC-3098, the improper grievance memorandum. (ECF No. 20-4 at 7, AR 740.05.6.A.) The time limit for a response to an informal level grievance is forty-five days from the date the grievance is received by the grievance coordinator to the date it is returned to the inmate. (ECF No. 20-4 at 8, AR 740.05.12.) The inmate then has five days from receipt of the response to proceed to the next grievance level. (ECF No. 20-4, AR 740.05.12.A.)

At the first level, the inmate must provide a signed, sworn declaration of facts that form the basis for his claim that the informal response to the grievance is incorrect, which should include a list of persons with relevant knowledge or information and any additional relevant documentation. (ECF No. 20-4 at 8, AR 740.06.2.) If the first level grievance does not comply with procedural guidelines, it is to be returned to the inmate, unprocessed, with instructions using form DOC-3098 (if applicable) for proper filing. (ECF No. 20-4 at 9, AR 740.06.3.) The prison has forty-five days from the date the grievance is received by the grievance coordinator to give the inmate a response to the first level grievance. (ECF No. 20-4 at 9, AR 740.06.4.) The inmate then has five days from the date he receives the response to proceed to the next grievance level. (ECF No. 20-4 at 9, AR 740.06.4.A.)

The time limit for a response to a second level grievance is sixty days, from the date the grievance is received by the grievance coordinator to the date it is returned to the inmate. (ECF No. 20-4 at 9, AR 740.07.3.) Administrators are required to respond to the second level grievance, specifying the decision and reasons, and return it to the grievance coordinator. (ECF No. 20-4 at 10, AR 740.07.4.)

AR 740 also discusses abuse of the inmate grievance process, stating that inmates are prohibited from abusing the prison grievance system by "knowingly, willfully or maliciously filing frivolous or vexatious grievances." (ECF No. 20-4 at 11, AR 740.09.1.) Abuses of the inmate grievance procedure include, *inter alia*: including specific claims or incidents previously filed by the inmate, and a grievance that contains two or more appropriate issues. (ECF No. 20-4 at 11, AR 740.09.2.B, F.) If this is the case, the caseworker returns a copy of the improper grievance to the inmate with form DOC-3098, noting the specific violation. (ECF No. 20-4 at 11, AR 740.09.3.A.) This section of AR 740 implies that an inmate may re-submit the improper grievance, but must do so within the prescribed timeframe. (ECF No. 20-4 at 11, AR 740.09.4.A.)

Defendant identifies two grievances where Plaintiff attempted to exhaust his administrative remedies relative to this action: grievance 20062998812 and grievance 20063011050. With respect to grievance 20062998812, Defendant argues that Plaintiff improperly submitted a second level grievance before he submitted the first level grievance, and failed to correct the deficiency as instructed. (ECF No. 20 at 2-3, 8; ECF No. 26 at 3.) As to grievance 20063011050, Defendant contends that Plaintiff failed to submit an informal level grievance that complied with AR 740, after being instructed as such. (ECF No. 20 at 3, 7.)

### 3. Grievance 20062998812

Defendant acknowledges that Plaintiff filed an informal level grievance for grievance 20062998812 on April 21, 2015 (ECF No. 20 at 2:20-22), though Defendant did not actually submit the grievance as evidence in support of his motion. (*See* ECF No. 20-3 at 2-6.) Plaintiff did provide the informal level grievance in support of his opposition. (ECF No. 24 at 35-38.) The first page is difficult to read, but the continuing pages assert that Plaintiff told Vest about a sign posted in the culinary, and Vest went inside and in a rage, Vest ripped the sign down. (ECF No. 24 at 36.) Plaintiff asserts that his Passover meal was pre-approved and that every meal up to that point had been allowed to be taken out of the culinary. (ECF No. 24 at 37.) He claimed that he was punished as he could not eat around leavened bread and did not receive his meals. (*Id.*) He references retaliation. (*Id.* at 38.)

According to Defendant, Plaintiff received a response denying this informal level grievance. (ECF No. 20 at 2:23, citing Exhibit B at 1.) The document Defendant relies on—the first page of Defendant's Exhibit B—is an improper grievance memorandum dated September 25, 2015, which advised Plaintiff he had to complete a first level grievance before proceeding to the second level. (ECF No. 20-3 at 2.) It appears that this refers to the second level grievance Plaintiff later filed, and not the informal level grievance as Defendant suggests.

According to Plaintiff, he did not receive a response to the informal level grievance within AR 740's forty-five-day timeline, and so, as he is permitted to do under the regulation, he moved to the next level and filed his first level grievance. He submits a copy of this grievance, which appears to be dated July 9, 2015. (ECF No. 24 at 39.) The first level grievance states: "As previously stated in my informal that has of yet been answered and is overdue to be answered and as is stated in NRS 740.03-I may proceed to the next level." (*Id.*) This document corroborates Plaintiff's statement that he did not timely receive a response to the informal level grievance, and did in fact file a first level grievance. He says he never got a response to the first level grievance, and his caseworker, Ms. Moses, asked him about it the first level grievance and advised him to move on to the next level. (ECF No. 24 at 34.)

According to Defendant, Plaintiff tried to appeal the decision on the *informal level grievance* by skipping the first level grievance and filing a second level grievance related to the same issue. (ECF No. 20 at 2:23-25, citing Exhibit B at p. 2.) Defendant points to the second level grievance Plaintiff filed dated September 21, 2015. (ECF No. 20-3 at 3; *see also* ECF No. 24 at 40-45.)[3] The second level grievance stated that during Passover he is not supposed to eat his meal near unleavened bread, and Ms. Moses had volunteered her time to supervise the inmates when they took some meal items to chapel. (ECF No. 24 at 41.) On the Friday evening meal, however, Plaintiff was told he could not take his meal out of the culinary. (*Id.*) He was

---

[3] A comparison of the second level grievance submitted by Defendant with that submitted by Plaintiff reveals that Defendant did not provide the court with the entirety of the grievance, but only the first page. In the future, defense counsel shall provide all of the relevant grievance documentation. This is important because if, for example, a defendant argues that a grievance was rejected for improperly containing more than one appropriate issue, the court needs the entirety of the grievance to review in order to determine whether the grievance did in fact contain more than one appropriate issue in addressing whether the plaintiff properly exhausted administrative remedies and whether those remedies were in fact available to the plaintiff.

cuffed and taken to operations by the officer who put him in a cell and stated: "I hope your God is proud of you now." (*Id.*) He also states that staff "wanted my informal to disappear," presumably referring to his informal level grievance (which he claims went unanswered). (*Id.*) He referred to the incident where he told the officer of the sign posted on the wall stating that the inmates were allowed to take their meals out of the culinary, and that Defendant Vest tore the sign down. (*Id.* at 43.)

This second level grievance is dated September 21, 2015, which corresponds with the September 25, 2015 improper grievance memorandum advising Plaintiff he had to complete the first level grievance proceeding to the second level. (ECF No. 20-3 at 2.) It also corroborates Plaintiff's claim that he never received a response to the first level grievance, as it was filed after the forty-five-day timeframe would have expired and allowed him to move to the second level pursuant to AR 740.

Defendant does not address Plaintiff's argument that his informal grievance was never responded to, but his claim is corroborated by the fact that Defendant did not produce a response to the informal grievance (or the informal grievance itself) in support of his motion. Nor does Defendant discuss Plaintiff's claim that he did in fact file a first level grievance when he did not get a response to the informal level grievance after forty-five days. Defendant's reply brief does not acknowledge the actual first level grievance document Plaintiff submitted in support of his opposition. Therefore, the court has no evidence contradicting that Plaintiff did file the first level grievance and that he received no response and proceeded with his second level grievance.

Plaintiff apparently resubmitted his second level grievance three more times, and each time it was rejected as improper because he did not file his first level grievance. (Improper grievance memoranda dated October 16, 2015, November 17, 2015, and December 10, 2015 at ECF No. 20-3 at 4, 5, 6.)

The evidence before the court indicates that Plaintiff filed his informal grievance on April 21, 2015. He did not receive a response and filed his first level grievance on July 9, 2015. Again, he received no response, and he filed his second level grievance on September 21, 2015. The second level grievance was erroneously rejected (several times) for not being preceded by a

first level grievance. Accordingly, the court concludes Plaintiff did exhaust available administrative remedies with respect to grievance 20062998812. Therefore, Defendant's motion for summary judgment should be denied insofar as he argues Plaintiff failed to exhaust his administrative remedies. As a result of this finding, the court need not address whether Plaintiff exhausted his administrative remedies via grievance 20063011050.

**B. Retaliation**

To reiterate, on screening, Plaintiff was allowed to proceed with a retaliation claim based on the allegations that Defendant Vest confiscated his meal, shoved him, placed him in a holding cell and threatened him because Plaintiff was exercising his First Amendment right to practice his religious faith. (*See* ECF No. 8 at 6.)

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Willliams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements:
> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "[A] claim for retaliation can be based upon the theory that the government imposed a burden on the plaintiff, more generally 'because he exercise[d] a constitutional right.'" *Blaisdell v. Frappiea*, 729 F.3d 1237 (9th Cir. 2013) (citations omitted).

According to Defendant, on April 11, 2015, several Jewish inmates requested to take their meals to their assigned housing unit, and were directed to a posted memo that allowed them to take their meal to the chapel on April 9 and 10, 2015, in observance of Passover. (ECF No. 20-2, Vest Decl. at ¶ 4.) The memo stated that on April 11 and 12, 2015, the Passover meal was to be eaten in the culinary and not removed. (*Id.*) Defendant asserts that the Jewish inmates were not allowed to take their meals outside of the culinary on April 11 and 12, 2015, because there were no staff members who could oversee the inmates eating in the Chapel on those dates. (*Id.* ¶ 5.) Defendant claims that he directed Plaintiff to the memo, but Plaintiff attempted to remove his

- 11 -

meal from the culinary, and when Defendant questioned him about it, he stated the memo was wrong and confusing because he had been allowed to eat his meal outside the culinary on April 9 and 10, 2015. (*Id.* ¶ 6.) Defendant asserts that Plaintiff became irate and loud, and Defendant told him he could sit down and eat or throw the meal away. (*Id.* ¶ 7.) Plaintiff responded that the memo was wrong and was breaking the law. (*Id.*) At that point, Defendant took the posted memo down and again asked Plaintiff to sit and eat or return to his unit. (*Id.*) Plaintiff said he wanted to file a grievance with shift command, and in response Defendant restrained Plaintiff and transferred him to another officer who escorted him to the cell to wait to speak with shift command. (*Id.* ¶¶ 7-8.)

Defendant argues that he is entitled to dismissal or summary judgment because Plaintiff alleges that Vest threatened to lock Plaintiff in the hole if he filed a complaint, and this verbal threat is not an act, but merely a threat to act in the future which cannot state a retaliation claim. (ECF No. 20 at 9:23-27.)

Plaintiff takes issue with Defendant's recitation of the facts. He contends that he was trying hard to explain that there was a posted memo inside the culinary that had Plaintiff's name and number on it and stated that Plaintiff was allowed to take his meal out during Passover. (ECF No. 24 at 2.) He claims that he was cuffed so violently that his cup fell out of his hand, and was told he would regret going to operations. (*Id.*) When he was attempting to exercise his religious rights, he was told he had to eat in the culinary or throw his meal away. (*Id.*) He says that there was no reason why Plaintiff was stopped from taking his meal out of the culinary. (*Id.* at 5.) He claims that Defendant is misleading the court into believing that the meals brought out of the culinary are eaten at the chapel, implying the meal could be eaten in the cell. (*Id.* at 7-8.)

As a result, the court finds a genuine dispute exists as to various material facts surrounding the retaliation claim.

In addition, Defendant's argument that a mere threat does not constitute retaliation ignores Plaintiff's claim that Vest did not just threaten to throw him in the hole, but confiscated his meal, shoved him and placed him in a holding cell because he was exercising his right to practice his religion by leaving the culinary to eat his meal, which he contends is required during

Passover. Moreover, Defendant's argument is directly contradicted by the Ninth Circuit. "[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). "By its very nature, a statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." *Id.* "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Id.* at 1271. The district court case Defendant relies on, *Walker v. Kebler*, 3:08-cv-00495-LRH-VPC, 2009 WL 837879 (D. Nev. Mar. 27, 2009)[4], was decided *before Brodheim*.

Finally, insofar as Defendant implies he is entitled to summary judgment because his conduct was supported by a legitimate penological interest (safety and security because there was no one to monitor the chapel on that date), Plaintiff raises a genuine dispute of material fact as to this element of his claim. Plaintiff disputes the assertion that Defendant's conduct was supported by a legitimate penological interest as he states that the meal did not need to be eaten in the chapel, but could have been eaten in his cell (which is consistent with his allegation in the Amended Complaint that he pointed to a sign that said those observing Passover were permitted to eat their meals in their cells (*see* ECF No. 7 at 8)).

Because there are disputed issues of material fact and Defendants' legal argument concerning the threat is unfounded, Defendant's motion for summary judgment as to the merits of Plaintiff's retaliation claim should be denied.

///
///
///
///
///
///

---

[4] Defendant's citation to *Walker* (2009 WL 837979) is incorrect. The correct citation is *Walker v. Kebler*, 3:08-cv-00495-LRH-VPC, 2009 WL 837879 (D. Nev. Mar. 27, 2009).

- 13 -

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order DENYING Defendant's motion (ECF Nos. 20/21.)

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 23, 2017

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE